SHANKE *v.* UNITED STATES HEATER CO.

INJURY TO EMPLOYÉ—NEGLIGENCE—ASSUMPTION OF RISK.

*1. Plaintiff must recover upon the negligence alleged. Where the negligence alleged is that boards were "uneven, unsound, rotten, unsafe, and defective," he cannot recover upon the theory that sound boards were not sufficiently strong, or that the ground where they were used was soft, so that a loaded truck, when being wheeled over the boards, depressed the ends, causing the load to fall upon him.

2. Where danger, if any, is apparent, and good and sufficient material is supplied, which employés are authorized to use as they deem necessary, the employé assumes the risk, and there is no negligence on the part of the employer.

Error to Wayne; Waite, J. Submitted November 13, 1900. Decided December 4, 1900.

Case by Joseph Shanke against the United States Heater Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

The defendant was engaged in the manufacture of steam heaters. It had a foundry and machine shop. The cast-

---

*Head-notes by GRANT, J.

ings were wheeled from the foundry to the yard adjoining, and dumped upon the ground. From the yard they were wheeled into the machine shop as they were needed. Two-wheel trucks were used, with two handles,—one on each end. Sand and refuse had been carted from the foundry and dumped in the yard where these castings were placed. The ground was, in consequence, somewhat soft. Plaintiff had been for a year at work cleaning castings, and then carrying them onto the floor in the shop. He also had helped to wheel the sand and refuse from the foundry into the yard. He had seen the castings wheeled into the yard, and from the yard into the shop, and was familiar with the method of the work. The ground was too soft to wheel the castings over, and therefore boards 1 inch thick and from 6 to 12 inches wide were placed upon the ground, over which the trucks were wheeled. Defendant for this purpose had furnished and piled in the yard boards, which the workmen could take and use as they saw fit, and as, in their judgment, were needed. The castings were dumped in the yard without any order, and wherever it was most convenient. The workmen placed these boards end to end where it was necessary to load the castings and wheel them to the shop, or from the foundry to the yard. The castings weighed from 300 to 750 pounds. As the wheel of the loaded truck came to the end of a board, it would press the end more or less into the soft soil. Plaintiff and another employé were ordered on the day of the accident to wheel some of these castings into the shop. They had safely wheeled in 15, weighing from 300 to 350 pounds, and in doing so had taken up and placed the boards where they were needed. The sixteenth casting was heavier, weighing, as plaintiff testified, 700 to 750 pounds. He was in front, pulling, with his face to the truck. His companion was behind, pushing. Plaintiff described the accident as follows:

"There was a board there underneath, and the weight kept digging into the ground so that it caused a hole, and as I was about to lift, to start with it, the board broke. I fell to my knees, and the casting on top of me."

The boards where they loaded this casting had been previously placed there. Plaintiff testified that the boards looked as though they had never been used before. The negligence charged is that:

"The boards were unfit for the purpose, because they were uneven, unsound, rotten, unsafe, and defective, by reason of which the said path or paths or passageways upon said yard became and were in a dangerous and unsafe condition, and that for this reason the defendant did not provide a reasonably safe place for the plaintiff to work in."

The manner of the accident is thus described in the declaration:

"Plaintiff avers that, while he was thus pulling said car, truck, or wagon in a careful, prudent, or diligent manner, he caught one of his feet on one of the planks or boards which lay in said path or passageway, and he was necessarily and unavoidably tripped, and stumbled."

In regard to the work which plaintiff was employed to do, he testified:

"My regular work was carrying patterns in the foundry, and, if there was nothing for me to do in that line, I would do whatever I was told to do."

At the conclusion of the plaintiff's testimony the court directed a verdict for the defendant.

*Ira A. Lieghley*, for appellant.

*Keena & Lightner*, for appellee.

GRANT, J. (*after stating the facts*). The instruction was correct. The theory of the declaration is not that sound inch boards were not sufficient, or that the ground was soft, but the sole theory of the declaration is that the boards were uneven, unsound, rotten, unsafe, and defective, in consequence of which the place was unsafe. Plaintiff cannot now recover upon the theory that sound boards were not sufficiently strong, or that the ground was soft, so that the ends of the boards would be pressed

into it by the weight upon them.   If, however, we assume that the declaration was sufficient, still plaintiff has no right of action.   He was familiar with the character of the earth, and knew that the effect, when the wheel reached the end of a board, would be to press it down into the ground.   This effect was as apparent to him as to any one.   He and his co-employé were furnished with sufficient material to make the passageway safe.   This is not a case of permanent passageways, upon which employés have a right to rely.   The employés made such passageway for themselves, and could either have filled in at the ends of the boards with earth, or have placed a board underneath, or have put down two boards.   The doctrine of safe place has no application to this case.   The defendant was guilty of no negligence.   Whatever danger there was was apparent, and assumed by the plaintiff.

Judgment affirmed.

The other Justices concurred.